Good morning. May it please the Court, Douglas F. Cushney appearing for the appellant, Meredith Oden. This appeal has two aspects, as the Court is aware. One is the District Court case, which was argued, decided on summary judgment, came to this Court, went up to the Supreme Court. This opinion, as I read it, the earlier opinion was vacated. Consequently, at the present time, I believe we're starting essentially with a clean slate, rather than reconsidering the prior Oden opinion from a prior panel. Notwithstanding this, and comments this morning with respect to the District Court case, which directly addressed the issues of the sexual harassment, I want to limit my remarks to comments made in the prior Oden opinion. Because, out of an abundance of caution, I would like to ensure that this panel does not look at that and assume that, well, everything was fine from the point of the appellant's view of the case. Well, if we're not dealing with the prior opinion, and if it's not law of the case, why are you going back to the prior opinion? Because the prior opinion raised points which apparently were of concern to at least another panel. Well, but only issues in your briefs, and in this case, I assume, are before the panel, or did I miss something here? The prior briefs are before this panel. The supplemental briefing, which of course was carried out at the direction of this panel, is also before the Court. However, as far as high points, so to speak, I want to address these particular issues that were apparently found to be dispositive by the prior panel, and in addressing the entire issue, I think this is of some importance. The main issue which the prior panel went off on is essentially saying that if the administrative agency is sluggish in their response to sexual harassment charges, which in this particular situation involved physical attacks on an 18-year-old girl at the Northern Marianas College, if the response is sluggish, in other words, if the administrative agency is incompetent, lazy, does not follow their own regulations, which in fact happened here, that's okay. What is the standard you would ask us to adopt if the internal procedures are not followed? And by that I mean, does there have to be some prejudice that flows from the delay, not from the original acts about which your client is complaining, but does there have to be some harm that flows from the delay in taking action or not? And how would you explain your answer in light of precedent? I submit that by a failure to follow their own sexual harassment regulations, that the matter of harm because of the delay should not be considered by the Court as any sort of primary factor, because everybody has a different view as to harm. What was the regulations? Tell me what the delay was factually that's in the record and that you put in your briefs. There was counselors appointed, there was a hearing and all that stuff. Tell me where this delay sluggishness and this argument they're making is derivative of the record. What are those facts? The facts are that in January of 1996 and the first part of February of 1996, Meredith was subject to these sexual advances and attacks. She promptly informed the university. The university being which person? Because you have to notify someone that's directly involved. Correct. So she notified two counselors, the two counselors notified the president of the university. The president of the university is appointed by the Board of Regents. The president has hiring, firing authority. And didn't he appoint the two counselors to deal with the problem? Yes. And was there any sluggishness or delay there? Immediately, no sluggishness, no delay. And for two to possibly three weeks, things went just fine. On the deal that Meredith would not get a lawyer, she would not speak out and go public, and third, that she would get private counseling so that she could recover and everything would be okay. After that period, after that period, the university through the lawyer appointed by the president said no more. The two counselors said, go get yourself a lawyer because we are not going to help you anymore. In other words, the deal is off, forget it. How long did that period last? This took place in about March of the same year. From January date. Right. After that, she was essentially on her own. The following year, the hearing was held to determine whether this individual, this teacher, should be sanctioned or not. And he was. He was sanctioned. He was disciplined. He was told not to contact the plaintiff. So essentially, she won once they got to him. Not really. Because after he had been initially told of the charges and the university told Meredith, we're awfully sorry, but he's denied everything and we can't do anything else. This was in about March. So in April, she was attacked again. He was told not to contact her initially. And he did. Because the university didn't bother to follow up and that's one of the situations. Was that the bathroom scene or the staring down? The bathroom scene when she was trapped in the women's laboratory. What should the university have done? The university should have taken completely, one, they should have taken him away from any other female students. Two, they should have had a hearing while she was still at school. They could have had a hearing within the time frame provided by the sexual harassment regulations, which is essentially 30 days. She was in school and they could have done it. They could have done it in May. They could have done it in June. They could have done it in July. But they didn't do any of this. What's in the record about what they were doing during that period and were they deficient or was there an investigation going along? What's your position on that? It was over with. The investigation was over with by about March. So you're saying from March to the time of the hearing, there was zero done, period, by the school? That's correct. Nothing was done after that. Absolutely nothing. This flows more or less into the situation of the other excuses. That is that she had trouble getting a lawyer. That's not supported by the record. The other reason is that she moved to another school. What do you mean by that? I remember reading that. She had trouble getting a lawyer. Are you saying that the school is trying to say it was her fault because she was saying, I can't get a lawyer, that was the delay? That's my understanding. Was there any delay? What's in the record that says anything about that? There's nothing. The only item that I've been able, going back through the record, is her dad's affidavit, which was put in the record in the summary judgment where he said words to the effect that Meredith didn't like repeating or had a hard time going through this whole story with one lawyer after another. Wasn't there something about that she had a lawyer but then she decided to get another lawyer? That's true. She hired one individual and then retained myself. So you were the second lawyer? So far as I know. Okay. The other factor is that she moved to New Mexico and couldn't get back.  When did she move? She moved at the end of the semester and the record, I believe, reflects sometime towards the end of June. Now, I'm trying to understand this argument. She did leave and go to New Mexico. Now, if I'm correct in listening to you, you think she should have been there during the hearings, but they could have had the hearings without her or was she a necessary participant? She would have testified at the hearing. I suppose her deposition could have been taken, but she in fact testified in the January 1997 hearing. Well, the delay doesn't have anything to do with where she was, I assume, because if she didn't show up, it would be over. So the fact that she had been in New Mexico or nowhere else, there's nobody saying that she wasn't notified about the hearing or that there was no attempt. Is that right? There's nothing to prevent the university from having this hearing at any time, and it took us several months to get this thing on track. Why? Because it was sluggish, I guess that's the term. Or incompetent or lazy. Well, what is the standard of review as to their actions? So deliberate indifference, as I understand it. That's correct. Are you saying sluggishness is deliberate indifference? I'm saying that under the factual situation it is. You can't just say I'm incompetent or I'm lazy, I'm sluggish. You know, that's the kind of defense that criminal defendants come up with. I was drunk. I didn't know what I did. I understand. But as I understand deliberate indifference, it's that the college is in deliberate indifference to your clients and what happened to her. What difference does it make if he was punished then? Was there something going on in between? Are you saying that if they would have done something, maybe she would have stayed at the college? I don't quite understand that. Sure. They promised Meredith that she would have counseling, which was the most important part, and that the individual, Bruna de la Paza, would be taken away from any sort of connection with any female students. Because she had evidence at the trial with him about her problems. But that would – you're not suing a class action on behalf of the rest of the students. So whether or not they were going to do it for the other students is not relevant. That's correct. Okay. So they're delayed. The only harm that she suffered as a result of their delay, then, is the bathroom scene and possibly the staring down scene. Is that right? Well, when you say the only harm, that kind of denigrates a situation where you have an 18-year-old kid who was raised in a fairly protective family situation. She's been physically attacked on more than one occasion. Left, she's confronted in the bathroom by this individual. There was a counselor there at the same time, though. By pure coincidence. By pure coincidence. What goes on through a female's mind at the age of 18 when she's trapped and has gone through all of this before? She's terrified. Let me ask you one other question about the delay. Did she testify that she would have remained at the college had the hearing process been completed during that same school year, that same semester, or is the record silent on that? It's silent, Your Honor. I don't recall anything that she made as an affirmative statement. So we don't have that as potential harm, at least on this record. I don't recall anything in the record that indicated that she stated flatly, I would have stayed here. But the indication is that without the college doing anything, she left. She had to leave because she knew she was going to be harmed again. There was just no question in her mind about that because it happened. And the university was doing absolutely nothing about it. I want to return to the confrontation in the bathroom because that is an ugly incident. He was already under orders at that point not to get close to her, not to be around her. That's what I understand. Now, had the university proceeded expeditiously to have a hearing on him, what possible punishment could the university have demanded of the assailant? Well, one, if the hearing had been held promptly, as per the regulations, I don't believe this incident would have taken place either. Okay, I'll get to that. But what could the university have done? The university can't jail him. They can't jail him, but they could certainly terminate him so he wouldn't be on campus. Well, they can terminate him, but I assume that this is a public university, a public school. Anybody could wander in and wander into a bathroom. That's true. And even if they got an injunction against him and ordered university security to pick him up on site, that wouldn't necessarily prevent him, certainly wouldn't show deliberate indifference, if he got in and got into a women's restroom. Your Honor, what Your Honor has stated is something that would not show deliberate indifference. The point is, none of that ever happened. But he was ordered to stay away from her, even on a preliminary matter, pending more formal disciplinary mechanisms. Right, but the formal disciplinary mechanisms did not occur as per the regulations. That's the problem. And if they had, I don't believe this would have happened. Furthermore, if he was just a stranger wandering on the campus, what are the odds that somebody's going to be wandering on the campus, some male, and wander into the women's restroom and potentially attack him? But it wasn't some male, it was this charged-up professor. So I think what Judge Bybee's getting at, other than putting him in restraints, even if they'd taken action, injunction or whatever, if he wanted to get near her, he would have done it. He might have breached some law or restriction. But did you want to address your state law claims at all? Yes, as far as Section 1767, I did want to at least touch on that situation. With respect to that, Your Honor, the issue, at least from our point of view, is basically this, when does the 30-day period begin to run? It runs after the case is no longer pending. That's not what the statute says. See, the statute says it begins around 30 days after the claim has been decided. And when we amended the Rules of Civil Procedure, we made some very specific terms, claims being one of them. And you know that we can dismiss certain claims, but the action is still pending. Her claim was dismissed even though the action was pending. Didn't she have 30 days to appeal from that time? No, Your Honor. That claim may have been dismissed, but the claim is still pending also. That was state law. You give me some law on that. I mean, that throws me in a complete dizzy because that doesn't make any sense on partial judgment. I'm sorry. I'll let you talk. Go ahead. With respect to that, to me, that is what does make sense. The point is, assuming she filed in the local court 30 days after the actual order came out from the district judge. The dismissal of her first claim. Of her local law claim. Exactly. Now, she can ask for reconsideration of that under the inherent powers of the district court. She could ask for a Rule 54B certification to this court. She could appeal those claims. Not just the whole act, but those claims to this court. Now, what in the statute says that the claims of the local law actions, when they're dismissed and sent to the local court system, are not pending? Yet, those same claims for a Rule 54B certification, for reconsideration, for appeal, for post-judgment motions possibly under Rules 50 or 59. But the statute says dismissed. It doesn't say appeal. It says dismissed. And the claim was dismissed. I submit it is not dismissed, finally, until there is a final judgment from the district court. That's the general rule. You can't go up. You can't have post-judgment motions. You can't do anything until there's a final judgment in the district court. Now, why should this be treated any different? Well, it's not why. Do you have any authority that says that? Are we the first court to address this issue? That's the problem. That's why I tried to address this the whole time. How about United States v. Lewis? United States v. Lewis tends to say that. Well, it doesn't say it, though. That's the problem. So, you're asking us to say it. Counsel, you have about a minute and a half left, if you'd like to reserve it for rebuttal. I would like to reserve at this time, Your Honor, if I could for rebuttal. Thank you. Good morning, Your Honor. May it please the Court, my name is Tred Ierly, representing Northern Marianas College, and I'd like to welcome you to Honolulu. Regarding the sexual harassment issue, the parties agreed that the Supreme Court's decision in Gebser controls this case. And under Gebser, to state a claim under Title IX, an official who has authority to address the alleged discrimination must have actual knowledge of the discrimination and fail to adequately respond. The failure must amount to a deliberate indifference. That is, as stated by the Supreme Court, an official decision not to remedy the violation. And that simply did not occur here. Well, there's no question that there was actual notice. There's no question that there was actual notice in March 1996. So we get down to the deliberate indifference. That's right. And we get down to delay. There's a policy that things will be dealt with very quickly. I would differ slightly with Mr. Cushnie. I think there was some justification, or there was justification for the delay. It took time to organize a committee in order to hear the claims. The college organized a sexual harassment committee to hear the claims. But the necessity for doing those things would have been known at the time the policy was developed, to hear a claim expeditiously, preferably within 30 days. I mean, clearly, when writing that policy, they had to have known. They had to have somebody to hear it, had to investigate, and so on and so forth. So what – I would have to recede that point, and I don't think that they organized a committee until there was an actual incident they had to investigate. Even so, according to my counting, if I'm not wrong, help me here, the hearing didn't take place until January 4, 1997, which was 10 months after she filed the complaint with the school. So even though that happened, it took 10 months to organize the first committee. There were some other problems, such as hiring and firing, then hiring another attorney, accommodating her so that she would have an attorney to represent her at the hearing. Did she request this delay, though, specifically? I'm not aware that she requested it. Well, the record does not reflect that she did. So what are we to make of that, then? Well, I think the important thing is looking at GFSR and whether or not that constitutes an act of discrimination, and it does not. There was a remedy. The individual was punished, as you noted, Your Honor. Well, the other side of that, though, is that the old adage, justice delayed is justice denied, certainly doing something eventually could still, at least theoretically, constitute deliberate indifference, couldn't it? I'm sorry, I didn't quite get that. Well, I know that you wouldn't concede that this occurred in this case, but let's assume that a college knew of an incident, had a complaint filed, and said, well, this is very interesting, but we like this professor, and he's going to retire in a year and a half, so let's set the hearing out after a year and a half so it won't actually be a problem to him, but we'll eventually take care of this. Could a delay be deliberate indifference in some circumstances, even if something is eventually done? I think under that hypothetical, if there are additional incidents, serious incidents. Well, what if there are no other incidents? Could it still be deliberate indifference to the original complaint, to leave the complainant swinging in the wind for a long time? If somehow that caused her to waive her right to file in court and allow the statute of limitations to run, I think that would be a harm. So short of that, you would say it can't be deliberate indifference to just wait unless there's some specific measurable harm like the statute of limitations running? I don't think under Jeff's word that that would constitute deliberate indifference. Well, why wouldn't that be a kind of failure to respond? Well, they are responding. You're saying a year and a half out they are conducting a hearing. I don't know under the hypothetical what the justification for that is, but they do reach a hearing stage and remedy this violation, and that's what GEPSR calls for. It's not an act of discrimination to delay under Title IX, and that's what we're... Well, let's find out what happened here, make sure I'm clear. The discrimination took place, and after that, the notification to the president, he assigned the two counselors to meet with her. They met on 14 occasions. They helped her drop the class. They helped her formulate the complaint, and they also met with POSA. Now, how much of the time from the time that the incident happened in the report was expended, and then how much time was there informally in the committee? In other words, they were working with her. How much time did that take? I don't think it took the 10 months that you referred to. Counselors, I think, three months. Right, I think I would agree with that. And so three of the 10-month delay was working with her directly. I'm sorry? Three of the 10 months was working with her directly. I think that's correct, yes. And you're saying that in the 10 months, though, the committee wasn't formed. During the three months, it took seven more months to get the committee up and running. That and Ms. Oden finding counsel and arranging the hearing. Well, I hear you talking, but maybe I'm confused. Let's assume that Ms. Oden doesn't have counsel, but you're going to have a hearing. What difference would it make? Well, if she wants to have counsel present. But is there something in the record? And maybe that was confusing her. There's nothing in the record that says, please don't have a hearing until I get counsel? No, there's not. Okay, because if you were to force the issue with a hearing, we would have that issue here, but that apparently is not in the record. I think that's correct, yes. I would point out that Ms. Oden's father described the college's involvement. He submitted an affidavit in the record and said there was never any doubt that Ms. McPheeters, the college president, the college, and the counselors were assuming full responsibility for the college's part in this whole ordeal. And we were receiving the full attention and support of the college to rectify the situation. What happened between the time of the complaint and the appointing of the counselors and the hearing? Was there some order telling he denied the charges, but was there some further actions of the college? There was some language being talked about as he was told not to see her. What was formally done then was not short of a hearing. I think it was just meeting with the president and telling him not to stay away from the victim. So it was a directive from the president to the teacher, stay away from the victim? That's my understanding, yes. Nothing formal, writing? I'm not aware. I have not seen anything in the record that was a formal instruction for him to stay away. So the complaint was filed. The issue was joined by his denial. The president says stay away from her, and then seven months or somewhat, alas, before there was an actual hearing to determine those denied charges and that admonishment. That's correct. If it pleases the court, I would like to move on to the jurisdictional issue on the supplemental claims. The last incident of alleged harassment occurred on April 10, 1996, and nearly two years later, Ms. Oden filed her federal supplemental claims in federal district court. The district court judge dismissed all the claims against the college, both federal and supplemental, on October 29, 1999. The remaining claims against Mr. Dallaposa went to trial. But during this interim, after the dismissal of her supplemental claims, Ms. Oden did nothing about those supplemental claims for ten months until a judgment was entered against Mr. Dallaposa on July 17, 2000. Finally, on August 16, 2000, over four years after the alleged incident, Ms. Oden filed her complaint in the commonwealth court on the supplemental claims. The commonwealth courts found that her supplemental claims were barred by the two-year statute of limitations and consistent with the plain meaning of 28 U.S.C. 1367 D, the statute of limitations was told for a period of 30 days after dismissal of those supplemental claims. As stated by the commonwealth supreme court, under these facts, Ms. Oden had 30 days after dismissal of her supplemental claim, not dismissal of the entire action. Do you agree with counsel that this is a case of first impression of us interpreting that statute? On these particular facts, I agree. The point is that there was dismissal of all the supplemental claims, but not the entire case. So part of the case proceeded to trial. So the issue of whether a claim is being dismissed versus a judgment on the whole cause of action, is a case of first impression under that statute on the tolling of the 30 days? In the federal system, yes. Of course, the commonwealth supreme court found that the dismissal of the claim is what is consistent with the claim. Well, which led back to the issue in this case here. That's correct. But I think that this is an issue that is mainly decided by state courts. And the state court is going to consider whether or not their statute of limitations has run, and what the impact of 1367D is. So how can it be raised here then? Well, it's raised here under a very unique jurisdictional statute, which allows this court to secure direct appeals from the Senate and my supreme court. That's right. And that's also, is that also an issue of first impression? Because the CMI court lost jurisdiction under the statute after 15 years, I don't remember. No, Your Honor, this court lost. I mean, we lost jurisdiction after 15 years. I think it is an issue, and we've briefed that. I think the statute does not provide for this court to hear even pending appeals after the 15-year period expired. I have difficulty reading the statute or the covenant that way. It talks about this court having jurisdiction of appeals, not jurisdiction to decide appeals or to hear appeals, but jurisdiction of the appeals. Why couldn't we read that the way we would ordinarily read any time limitation? That is, if the notice of appeal is properly filed before the 15 years, we hear the case. If it's appealable after the 15 years, we don't hear the case. Why isn't that the most natural reading of it? Well, the statute, Section 1824, does not provide for that. It only talks about the appeals and the cutoff date on May 1, 2004. Right, but the cutoff of what? In other words, if you file a lawsuit on the last day of the statute of limitations, the case goes forward, even though everything else that happens happens after that statute of limitations has expired. Why isn't that the regime that's set up by this statute? That is, that things are appealable, the notice of appeal can be filed so long as it is filed before the 15 years. I think one distinction might be that the covenant is a negotiated agreement between the Commonwealth and the United States, and the Commonwealth was ready after 15 years for its court to handle any appeals from its courts independently of any federal court oversight. Counsel, that would mean that our jurisdiction was dependent on how quickly we docketed the case after the appeal was filed. So if we put all the CNMI cases on a real fast track, we could have heard them before May 1. But anything that was still lying around the court's office after May 1, we'd have to pack it up and send it to some other court. That's kind of a strange rule, isn't it? Perhaps, but I think Ms. Oden could have pursued these claims quicker, and this issue would not even be before the court. Well, it's here, but we have to decide it. One way or the other, we either have jurisdiction or we don't, so we have to figure it out. It's not like the Speedy Trial Act where we have to be counting days to find out who the delay is attributable to in getting the appeal here. I would also note one further distinction. She did have an appeal. Her right of appeal was before the CNMI Supreme Court. They decided this issue before the cutoff. The notice of appeal was filed, the cutoff comes, and we would submit that the court lost jurisdiction at that point. You would limit it then that all of her claims relative to the statute of limitations, there's no jurisdiction in this court. That's correct. So we wouldn't address those at all. Is this, again, an issue of first impression relative to those cases that are floating in the system right now? I'm not aware of any decision that the court is making regarding that. Well, I don't know. We haven't looked at the docket, but there could be other cases like yours floating, and so if we decide this is still a case of first impression on your particular point. Right. I don't know if there are other cases pending. I imagine there might be direct appeals from the CNMI Supreme Court. I would also point out that I don't think even if the statute has not expired that this is a proper issue, a federal question, for this court to hear from the CNMI Supreme Court. It involves the interpretation of a federal statute and what the meaning of the word claim is in that statute, doesn't it? Okay, but in the estate of De La Cruz, this court held that it has jurisdiction where the CNMI Supreme Court decision implicates federal issues. I don't think the interpretation of this statute concerns a federal issue. As I stated before, I think... How can the proper understanding of a federal statute not implicate federal interests? Because the primary concern here is a commonwealth statute of limitations, and when it's told, certainly it is addressed in a federal statute. But I don't think that's the federal issue. The issue here is the running of the statute of limitations. Are you saying that this is a procedural issue versus a substance issue? The substance of the lawsuit is a state claim, but this is a preliminary procedural issue which should not be in the federal court? That's correct. Once again, under this unique statute on direct appeals from the CNMI Supreme Court. In the couple minutes remaining, I would just like to point out that there are a couple things that Ms. Oden could have done about her supplemental claims to protect herself so that we wouldn't even be here today. First of all, she could have filed immediately after the dismissal in the federal court, in the commonwealth courts, and pursued those supplemental claims. If Ms. Oden didn't want to have two separate claims running in two different courts, she could have voluntarily dismissed her federal claims and taken all the federal supplemental claims. We've been there before on these cases. They could also have asked for a stay in the state court. I mean, a lot of things could have happened. But the question is whether she had a right to do it, whether she could have, is a different issue, isn't it? That's correct. But I'm just pointing out there are things that she could have done. There are things raised in the briefing. But I agree with Your Honor's statement that the clear language of the statute talks about dismissal of the claim. And certainly the federal district court addressed the dismissal of the federal claims under 1367C and then went on to dismiss the supplemental claims under subsection D. So the clock started running at that point, the 30-day period. Are there no further questions? I have nothing further. Thank you, counsel. Thank you. Mr. Fishey, you have about a minute and a half. With respect to the matter of delay, Your Honors, after Meredith left Saipan and went to New Mexico and entered school, the record will reflect that she was locked in her room for two or three months on end, taking antidepressant drugs to try and overcome this problem, and was essentially nonfunctional. Now, if this hearing had been held in a timely manner, as per the sexual harassment regulations, in other words, June, July of 1996, I submit that this would not have happened. Is there psychological evidence in the record that substantiates your argument here? As far as her going to New Mexico, taking antidepressants, yes, Your Honor. Well, I mean, taking antidepressants, I'm talking about medical evidence. You're talking some sort of psychological theory here that because her injury was not addressed by the hearing, therefore her psychological problems continue. That sounds like an expert opinion to me. Was there any expert opinion on that in the testimony? No, not in the summary judgment. However, once again, the court inquired, is there any harm due to the delay? Well, sitting around when you've never taken antidepressants before, locked in a closed room with all the blinds drawn for months on end, I submit that that's not normal behavior. It's behavior that was affected by this situation, and that is what a jury should have an opportunity to look at, because this is a summary judgment proceeding. And in the case, which I'll give to the law clerks, decided in January of 2004 from the District of Nevada, that court recited the cases, had a good history of the various cases involved in this type of a situation under Title IX, and noted that this court, the Ninth Circuit, will normally, on claims of deliberate indifference, refer them to a jury. Let the jury decide whether this was indifferent or not, and that's what I submit should be the situation here. Counsel, your time has expired, and we appreciate the arguments of both parties. The case just argued is submitted. We will turn next to Hilao v. The Estate of Marcos, and just for the sake of this,
judges: Brunetti, Graber, Bybee